This document contains some pages that are of poor quality at the time of imaging.

74,833-01

Dear Court of Criminal Appeals
I'm Daymon Johns. I've been incarcerated for 5 in a half years on a possession charge I was bribean forced to take. I've been writing you guy's an still no respond on my appeal. You guy's wrote me once saying the case will be returned to Amarillo court of appeals. They want even answer. I'm not being rightfully treated as an American in the state of Texas. I cant even recieve no response on my appeal from none of the courts nor the parole boards on being bribe an trick, an forced to plead guilty. I want give up on this abuse. It was not right how the courts did me I never, ever recieved a fair trail witch I kept requesting but was ignored just so they could scare me into pleading guilty. I'm writing this letter once more to show I was trying to get in touch on my behalf. Thank you guy's for what you've tryed to do.

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUN 05 2015

Abel Acosta, Clerk

DAYMON LAMAR JOHNS
1650164 Robertson Unit
12071 FM 3522
Abilene, Texas   79601-8799

June 1, 2015

The Honorable Sharon Keller
Court of Criminal Appeals of Texas
P.O. Box 12308 -- Capitol Station
Austin, Texas   78711-2308

RE:   Daymon Lamar Johns v. The State of Texas
      Court of Criminal Appeals No. WR-74,833-01
      Court of Appeals No. 07-10-00303 & 07-10-00304
      Trial Court Case No. 56,483-E & 58,725-E

TO THE MOST HONORABLE PRESIDING JUDGE:

I have been appealing a possession of drugs charge in the above referenced cases for some time now and have heard no results or opinions from the courts in any form, other than the Court of Criminal Appeals notice that my Petition for a Writ of Habeas Corpus had been dismissed on November 3, 2010, because my appeals had then been pending. Regarding the offenses for which I have been incarcerated I seek relief on the basis that I am actually innocent, and I was tricked, bribed, coerced andf compelled into entering a guilty plea, in total disregard of my rights under the laws and Constitutions of Texas and the United States. I was abused and used for practice of the application of unlawful tactics, and taken advantage of, solely for the prosecutor to get a conviuction and justice be disregarded, ignored, and damned. This has resulted in the cost of my freedom, and for a crime I did not commit. I was coerced and compelled into entering a guilty plea through threats and scare tactics by the district attorney and the judge of the court himself.

I was visiting in the home of a friend that had had drugs in the house unbeknownst to me. The drugs found by the searching officers had been found hidden in a closet and other places not in plain sight, they were not immediately visible for I had not seen them -- I was sitting in the living room only visiting the homeowner. I was charged with a possession of drugs that were not even in my possession, either actual or constructive. The home-owner was charged also with the possession of the same drugs. I had repeatedly requested that I be tried by a jury, but Judge Woodbourn was not hearing it, and totally ignored my requests for a trial on three separate occasions, and forced me to remain in the Potter County Jail because I had been adamantly refusing to take a fall for any offense that I had not committed. My court-appointed attorney, Lynda Smith, was just as culpable in having me convicted for a crime I had not committed, instead of striving to see that justice prevailed. She later made a comment on a phone conversation I had with her, telling me that if the drugs were mine, I needed to confess because the Judge had told her that he was fed up with me denying that I had anything to do with the drugs found in someone else's house, and her knowing perfectly well that I had not even known of the drug's presence in the house!

The 108th District Court refused to give me a fair trial and compelled and coerced me into pleading guilty to an offense of which I was completely innocent

of any involvement whatsoever. Due to my young age at the time of my arrest (19 years old), and not understanding the court and criminal justice system, the DA, the Judge, and my own attorney scared me and coerced me into pleading guilty and admitting to something of which I was innocent, by promising me that I was going to be given probation and no prison time. I did not fully understand that by me pleading as my attorney and the Judge instructed, I would end up in prison for a crime with which I had not been involved with. I was taken advantage of because of my age and of not understanding the law and its procedures. I was very, very scared, and more than just a little afraid, because of what I was being told and how I was being treated in the jail.

My mother has tried to find out from the Amarillo Police Department exactly what I was being charged with, and what evidence was being used to obtain any conviction when there had been no drugs found on my person, but only in the home of a friend I was visiting. The police officer told my mother that they did not have the evidence anymore -- so, was it destroyed? Or maybe it never had even existed?

I had been on probation at the time of my arrest for the possession charge and that resulted in me being charged as having violated my probation. The probation was for a charge of evading arrest in a motor vehicle when I was a teenager. I had just about completed the probation when I was arrested for the drugs possession. I would have not even been in that house had I known that there was drugs in it. While I was being held in the Potter County Jail for a ridiculously long period, my attorney continued to badger me into admitting guilt and her telling me that I would be released, and be given probation that would be served concurrently with the probation I was already on. But I persistently continued to ask for a jury trial. Because of being misled and lied to by the Court's officers and its Judge, I pled guilty with the understanding that I would not have to serve any more jail time -- I would only have to continue on probation. This obviously was not the case, and I was totally lost in what happened after I followed the attorney's instuctions. I feel as though I had been taken an unfair advantage of because of my lack of education and understanding of what my pleading guilt to an offense of which I was innocent would result in. I did not fully understand and appreciate the consequences of my pleading guilty. My counsel told me that whatever happened, I could appeal the charges, conviction, and sentence. She was not in the least concerned with my well-being or of what would happen to me in the event I agreed to enter a guilty plea, even where she was cognizant of the fact that I had not known of the existence of the drugs in that house in which I was merely a visitor. She also told me that she was going "to work with the Judge" to "add to" my probation so that I would not get jail time. I signed for the probation because I had been misled by her and I was afraid to request a jury trial again after the last episode I had had with the Judge. But after everything was said and done, after I had followed my attorney's instructions and pleaded guilty, I was told I could not appeal because I entered a plea of guilt. I did not receive any of the promises made to me to compel me to pled guilty.

I need assistance in how I can have this injustice corrected. Even were I to parole tomorrow, I have no one to whom I can turn to continue to fight against this manifest injustice. I have no appeal attorney, no representative, thus, I write to you today, Lady Justice, to ask for guidance or direction for having my case properly reviewed. I do not understand all the documents and papers the Court and attorneys had me sign, and need assistance so I can better understand the charges, options, consequences, procedures, etc. I am asking if you will at least point me in the right direction, because I am totally lost in the Criminal

Justice System's maze of appellate and postconviction procedures and remedies. I want to have my conviction and sentence reversed, overturned, and expunged completely from my records. I am having a really hard time dealing with the realization that the judicial system has failed, it doesn't work as I had been taught and brought up to believe -- I was innocent, I declared it over-and-over to the Court, but instead of being accorded a trial as justice would demand, I was lied to, abused, and exploited by the Court so that the judge could make his constituents happy so that they would re-elect him when seeing that he was "tough-on-crime." I don't know how it can happen that I can be charged and convicted of a crime that I never committed, where I never had drgus in my actual or constructive posasession at **ANY** time. In reviewing the police reports it would be seen that I was "mentally slow," which can also be proven through my school records. All of my life I have had to contend with comments that were directed at me like "his elevator doesn't go to the top floor," or "he isn't the brightest lightbulb in the chandelier," or "he isn't playing with a full deck," so yeah, I have most likely than not, heard them all. The inmate that has helped me draft this letter has assisted quite a few inmates with their cases. He advised against sending this letter to you, telling me that it was an inappropriate communication -- but it is what I wanted to do. He also let me read a whole bunch of articles he has about Americans that have been wrongly convicted, and then exonerated. Read the PRISON LEGAL NEWS (subscription card enclosed), or the CRY JUSTICE NOW NEWS, P.O. Box 197 New Bloomfield, MO 65063-0197, and you will better appreciate knowing how prevalent is the trend of convicting the innocent in America. The final result of my limited education and total lack of understanding of the criminal justice system was my agreeing to plead guilty on the promise that I was going to be given probation and I was going to go home. I just **HAD** to get out of JAIL so I could get away from those in there who had been threatening to do things to me that were against nature and my beliefs.

I have been trying to appeal this case for the past five years and still I have heard nothing whatsoever from any of the courts. If there is not relief I can obtain in this case, please, let me know something. I do have factual evidence that I was **NEVER** in possession of the alleged drugs, and the police report will prove this up. I also have proof that I was made promises, in order to obtain a guilty plea, promises that were not fulfilled or kept. Is it possible to sue Potter County and the Court by proving I was not in possession of the drugs, and had no knowledge of the drug's existence; and showing that I was compelled and coerced into pleading against my wishes, because of being made promises that had not been kept or fulfilled? And where it all resulted in my being imprisoned for an offense that I had NOT committed? I am asking for information on what rights I have for having this case overturned, and if there are any actions that are available for bringing suit for a wrongful incarceration. You may contact my mother for additional information if it is needed --

Ms. Johnson; 2023 Oak Drive; Amarillo, Texas 79107

Of course, I ask that you contact me at the address given in the letterhead of this letter.

Your Honor, I thank you so very much, in advance, for whatever it is that you do to help me with this issue.

Very respectfully, I will always be,
Your obedient servant,

Daymon Lamar Johns

-3-

# Cry Justice Now News

## New Life Evangelistic Center

# Exonerations of Americans Wrongly Convicted of a Crime Hit Record Number

Volume 5, Issue 2

Spring 2015

The National Registry of Exonerations said 87 prisoners were exonerated, the highest ever totaled. About two-thirds of the 87 exonerations involved rape and/or murder convictions. Many of the overturned convictions were a result of false confessions coming to light or the discovery that no crime was actually committed. "In a steady number of cases we make horrible mistakes," report author Samuel Gross, a law professor at the University of Michigan, told U.S. News & World Report. Seventeen percent of those exonerated had at first pleaded guilty to a crime they did not commit. This usually occurred because the defendant was offered a plea bargain, in which a lesser sentence was promised in exchange for a guilty plea.

Gross found that no crime occurred in 27 of the cases. Examples of these mistakes included:

·Joseph Awe of Wisconsin, who served nearly three years in prison for arson until officials realized the fire was an accident.

· Nicole Harris of Illinois who was convicted of murdering her four-year-old son, who it turned out accidentally suffocated while playing with his brother. It was determined that Harris had been coerced into pleading guilty by Chicago police, who—during 27 hours of questioning—pushed and threatened her, forbid her to use the restroom, and prevented her from having food or water. She spent eight years in prison.

Other findings from the report showed the number of exonerations resulting from DNA evidence was down again, which has been the case since 2009.

"I think some DNA exonerations will keep happening, but not in the numbers we saw 10 or 15 years ago," Gross said. "If the other trends continue, they'll become a smaller fraction of all exonerations as time goes on."

Gross partially credits law enforcement organizations for the report's findings, as 38% of the exonerations were initiated by such groups.

## Special points of interest:

- Wrongly Convicted    Pg.2
- Unfair Phone Charges for Inmates & Meet the Medical Company            Pg.4
- Testimony        Pg.6 & 7
- Sermon                Pg.8
- Privatizing American Prisons System        Pg.9

*Please*
*Send All Letters*
*And Subscriptions*
*For Cry Justice*
*Now News*
*To*
*P.O. Box 197*
*New Bloomfield,*
*MO.65063-0197*

# Wrongly convicted Seattle man released after 10 years

A wrongly convicted Seattle man who spent 10 years in prison after being convicted of robbery and burglary has been released. Brandon Olebar was released from prison after the Innocence Project Northwest persuaded King County prosecutors to re-examine his conviction, which was based solely on eyewitness testimony, Two students from the Innocence Project Northwest, which is based at the University of Washington Law School, pulled together evidence that Olebar was not among the people who in February 2003 broke into the home of his sister's boyfriend and pistol-whipped and beat the man unconscious. The victim said as many as eight attackers beat him for more than 10 minutes and he recognized Olebar's sister as one of them. The victim later identified Olebar from a photo montage. Despite the fact that he did not have a facial tattoo and had an alibi, Ole-

bar was charged with burglary and robbery. A King County jury convicted him solely on the basis of eyewitness testimony and sentenced him to 16 1/2 years in prison, according to an Innocence Project statement. Project Director Jacqueline McMurtrie said the two law students tracked down and interviewed three of the assailants, who signed sworn statements admitting their involvement and denying that Olebar was present during the attack. Working with attorney Fernanda Torres, they presented the new evidence to Mark Larson, the King County chief criminal deputy prosecutor. After interviewing the same people, Satterberg's office moved to vacate the conviction and dismissed the charges. Olebar, 30, was released "Eyewitness misidentification is the single greatest cause of wrongful convictions," IPNW Policy Director Lara Zarowsky said.

# INNOCENCE: Another Exoneration from Death Row

**Reginald Griffin**, a former death row inmate from **Missouri**, became the 143rd person in the U.S. to be exonerated and freed from death row since 1973, after the state dismissed all charges related to his death sentence on October 25. Griffin had been sentenced to death for the murder of a fellow inmate in 1983. His conviction was overturned in 2011 by the Missouri Supreme Court (Griffin v. Denney) because the state had withheld critical evidence. Griffin's conviction relied on the testimony of two jailhouse informants who received benefits in exchange for their testimony.

Prosecutors withheld evidence that guards had confiscated a sharpened screwdriver from another inmate, Jeffrey Smith, immediately after the stabbing. Both of Griffin's co-defendants consistently said the third person involved in the crime was Smith, not Griffin. Cyndy Short, the current lead attorney for Griffin, said, "Reggie and his family are overjoyed. This has been a massive weight upon them all for three decades." Griffin is the 4th person exonerated from death row in Missouri, and the first in the country in 2013.

# Stories of Wrongful Conviction from California

**Arthur Carmona**
Convicted of armed robbery, 2 counts, and convicted, sentence to 12 years and released after serving 2 years. A 16 year old student was walking to a friend's house when he noticed a helicopter circling directly above him. Seconds later, he was stopped at gunpoint by police. Arthur was not wearing dark clothing or a cap, according to the complaint. Witnesses to both robberies were brought to the scene of Arthur's arrest. They could not identify him at first, but when police asked Arthur to put on the cap and a jacket, witnesses made the identification. Two hours after the two robberies he was arrested. Tried as an adult, was convicted and sentenced to 12 years based largely on the witness statements.

From the beginning, Arthur maintained his innocence. Family members and supporters started a campaign for his release, and began raising money. A Weekly and Los Angeles Times columnist, Dana Parsons began poking holes in the case and eyewitnesses recanted their testimony, On August 22nd, an Orange County Superior Court considered the overwhelming evidence that Carmona had been wrongfully convicted of both crimes and ordered his release with the agreement of the DA, but only after a stipulation that he would not sue them or the police.
Arthur was murdered in 2008 while leaving a party with friends.

| To mail as postcard place 34¢ stamp here |
| --- |

# WOW!

**Bonuses for 2, 3 and 4 year subscriptions!**

## SUBSCRIBE NOW!

Referred by 34092

Prison Legal News
PO Box 1151
Lake Worth, FL 33460

*Order and subscribe **online** at* WWW.PRISONLEGALNEWS.ORG *or by phone:* 561-360-2523

## → Subscription Bonuses ←

2 year subs get **2** bonus issues for **26** total!
3 year subs get **4** bonus issues for **40** total!
4 year subs get **6** bonus issues for **54** total!

To be sent information about the **BOOKS** that can be chosen as a bonus for 3 and 4 year PLN sub INSTEAD of extra issues, check the box below.

| | 6 MONTH | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS |
|---|---|---|---|---|---|
| PRISONER | $18 | $30 | $60 | $90 | $120 |
| INDIVIDUAL | *Not avail.* | $35 | $70 | $105 | $140 |
| PROFESSIONAL | *Not avail.* | $90 | $180 | $270 | $360 |

*Prisoners can pay with* NEW STAMPS OR PRE-STAMPED ENVELOPES.

**Renewal** ☐          **New Subscription** ☐          **Change of Address** ☐

Allow 4-6 weeks for delivery of first issue or for renewal or change of address to reflect on label.
Please send information about PLN, the books it sells, and its 3 & 4 year sub book bonuses! ☐

Name _____ DOC# _____

Org/Inst _____

Address _____ Suite/Unit _____

City/State/Zip _____

Use this card to submit a COA or info request by writing your return address on the other side and use a 34¢ stamp.
**Send this form and payment to:** Prison Legal News, PO Box 1151, Lake Worth, FL 33460